**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| JOHN GAY, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>Amdep Holdings, LLC d/b/a Ammunition Depot, a Florida limited liability company,<br><br>    Defendant. | Case No.: |

**CLASS ACTION COMPLAINT**

**NATURE OF THE ACTION**

1.      Plaintiff John Gay ("Plaintiff") brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, and alleges Defendant Amdep Holdings, LLC dba Ammunition Depot ("Defendant" or "Ammunition Depot") knowingly and/or willingly engaged in the unlawful practice of advertising in false and deceptive unsolicited commercial e-mails ("spams") in violation of (i) Washington's Commercial Electronic Mail Act, RCW 19.190, *et seq.*, and (ii) Washington's Consumer Protection Act, RCW 19.86, *et seq.*

2.      More specifically, Ammunition Depot uses a variety of tricks and deceptive language to influence consumer behavior. For example, Ammunition Depot frequently uses the subject line to disguise the true commercial purpose of the email and trick the recipient into opening it, such as emails sent by Ammunition Depot on February 11, 2026, with the subject line: "Winter Sale Ends Tonight" and purporting to represent that the advertised discounts, including "5% off orders $149+," would end that evening.

3.      In reality, the advertised discounts, as well more significant discounts, continued to

1

apply after February 11, 2026, as evidenced by Ammunition Depot having sent emails with the subject lines "Presidents Day Sale: Choose 6% Off Or Free Shipping" and "Our Presidents Day Sale Starts Now!" on the very next day. In other words, the supposed discounts attributable to the "Winter Sale" (*i.e.*, at least 5% off) that consumers had just one day to obtain were still available after the final time period suggested by Ammunition Depot expired, and so the "***Ends Tonight***" (emphasis added) subject line representation was false. And on information and belief, Ammunition Depot *always* offers at least 5% off orders $149+, if not the entire store.

4. In these and other instances, Ammunition Depot is in violation of the Washington Consumer Electronic Mail Act ("CEMA"). *See* RCW 19.190.020(1)(b). As the Washington Supreme Court recently stated, "CEMA distinctly outlaws sending commercial e-mails that contain false or misleading information in subject lines." *Brown v. Old Navy, LLC*, 4 Wash. 3d. 580, 584 (Wash. 2025). And "[a] violation of CEMA's e-mail regulations is a per se violation of the Consumer Protection Act (CPA)." *Id.* "Per se CPA violations are predicated on the Legislature's recognition that certain conduct is categorically against the public interest." *Id.* (quotation omitted).

5. Plaintiff brings this class action on behalf of himself and other persons residing in Washington who received Ammunition Depot's false and misleading emails. Plaintiff's requested relief includes an injunction to end these practices, an award to Plaintiff and class members of statutory damages for each illegal email, and an award of attorneys' fees and costs.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the total matter in controversy exceeds $5,000,000 and there are over 100 members of the proposed class. Further, at least one

2

member of the proposed class is a citizen of a State within the United States and at least one defendant is the citizen or subject of a foreign state.

7. The Southern District of Florida has specific personal jurisdiction over Defendant because Defendant is at home and headquartered in this District (in Boca Raton, Florida). Defendant also has sufficient minimum contacts in Florida, or otherwise intentionally avails itself of the markets within Florida through its transmission—from its Florida headquarters—of illegal commercial electronic mail messages to consumers.

8. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District.

## PARTIES

9. Plaintiff is now, and at all times relevant has been, an individual domiciled in Thurston County, Washington.

10. Defendant AmDep Holdings, LLC is a Florida limited liability company with its principal place of business in Boca Raton, Florida.

## THE UNLAWFUL SPAM E-MAILS

**A. Under CEMA, it is a *per se* violation of the CPA to initiate (or conspire to initiate) the transmission of commercial emails with false or misleading information in the subject line to Washington residents.**

11. It is a violation of CEMA to "initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that . . . [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

12. As the Washington Supreme Court recently explained, "CEMA protects consumers by requiring that commercial e-mails communicate honestly about the terms of a given promotion

3

or sale in the subject line." *Brown*, No. 102592-1, at *19.

     **B. Ammunition Depot initiates (or conspires to initiate) the transmission of commercial emails with false or misleading information in the subject line to Washington residents.**

13.     Ammunition Depot has initiated (or conspired to initiate) the transmission of commercial electronic mail messages with several types of false or misleading subject lines to Plaintiff and members of the class.

14.     Among other things, Ammunition Depot's false or misleading subject lines describe a specific, limited-time promotion that is not, in fact, limited to the timeframe described in the subject line.

15.     In each case, the subject line conveys an objective statement of fact that is provably false or misleading. A non-exhaustive list of examples of subject lines from each category is provided below. Discovery will show additional emails in each of these categories and potentially other categories of false or misleading subject lines.

16.     The emails at issue are electronic mail messages, in that they were each an electronic message sent to an electronic mail address. The emails from Ammunition Depot also referred to an internet domain, whether or not displayed, to which an electronic mail message can or could be sent or delivered.

17.     The emails at issue are commercial in nature in that the purpose of the emails is to promote goods for sale by Ammunition Depot and induce consumers into making purchases from Ammunition Depot.

18.     The emails were sent at Ammunition Depot's direction and were approved by Ammunition Depot.

***i. The subject line describes a time-limited promotion or sale that is available for a longer period than what is specifically stated in the subject line.***

19.    Ammunition Depot misrepresents the length of time sales will be offered by sending one or more emails stating in the subject line that a sale is being offered for a specific short period, when in fact, the sale lasts longer. For example, Ammunition Depot frequently uses the subject line to disguise the true commercial purpose of the email and trick the recipient into opening it, such as emails sent by Ammunition Depot on February 11, 2026, with the subject line: "Winter Sale Ends Tonight" and purporting to represent that the advertised discounts, including "5% off orders $149+," would end that evening. In reality, the 5% discount continued to apply after February 11, 2026, as evidenced by Ammunition Depot having sent emails with the subject lines "Presidents Day Sale: Choose 6% Off or Free Shipping" and "Our Presidents Day Sale Starts Now!" on the very next day. In other words, the supposed discounts attributable to the "Winter Sale" (*i.e.*, at least 5% off) that consumers had just one day to obtain were still available after the final time period suggested by Ammunition Depot expired, and so the "***Ends Tonight***" (emphasis added) subject line representation was false.  The sale did not end; it simply changed its name from "Winter Sale" to "Presidents Day Sale."  On information and belief, consumers can obtain at least 5% off orders of $149 or more on every day of the year.

20.    This marketing tactic involves a fundamental misrepresentation of fact regarding the duration of the promotion. The Federal Trade Commission ("FTC") regulations prohibit this practice, stating that sellers may not "make a 'limited' offer which, in fact, is not limited." 16 C.F.R. § 233.5. On information and belief, Ammunition Depot determines in advance how long it will offer a given promotion, such that it knows when it represents the limited duration of the promotion that the description is untruthful. In other words, on information and belief, Ammunition Depot always planned for the sale to last longer than the advertised time period, such

5

that the subject line was false and misleading.

21.     The clear purpose of this tactic is to grab the consumer's attention and induce immediate action to secure savings that will not be available beyond a specific window of time. Research indicates that limited-time discounts create a sense of urgency that changes consumer decision making, including by persuading customers to purchase items sooner than they otherwise would, purchase more or different items than they otherwise would, or forego comparison shopping. Ammunition Depot designs the subject lines of its marketing emails to tap into these consumer urges.

22.     Ammunition Depot exploits the psychological impact of false urgency messaging by running year-round "sales" under various names.  When one "sale" ends, another begins immediately: Black Friday becomes Christmas Sale becomes New Year's Sale becomes Winter Sale becomes Presidents Day Sale, and so on:









23.     And when there is no holiday to which Ammunition Depot can reasonably tie a purported "sale," it defaults to a "Buy More, Save More" offer:



24.     When Ammunition Depot told Mr. Gay that he had until the end of the day on February 11, 2026 to take advantage of the "Winter Sale" and the associated savings, that was a lie: when the "Presidents Day Sale" began the following day, Ammunition Depot offered even deeper discounts.

25.     Ammunition Depot uses its time-limited sales to send more emails to consumers than it otherwise might. The company often sends multiple promotional emails every day, many of them advertising the "limited-time" offers, but then repeats the same tactic the following day or shortly thereafter) such that the advertised sale is meaningless (as shown clearly above).

### C. Ammunition Depot sends commercial emails to consumers whom it knows or should know reside in Washington.

26.     Ammunition Depot sent the misleading commercial emails to email addresses that Ammunition Depot knew or should have known were held by Washington residents, either because (i) Ammunition Depot had a physical Washington address that was associated with the recipient; (ii) Ammunition Depot had access to data regarding the recipient indicating that they were in Washington state; or (iii) information was available to Ammunition Depot upon request

from the registrant of the internet domain name contained in the recipient's electronic mail address. Moreover, Ammunition Depot does business nationwide and knows that at least some of its customers reside in Washington.

27. On information and belief, Ammunition Depot knows where many of its customers and email recipients reside through several methods.

28. For example, for any person that places an order online from Ammunition Depot, Ammunition Depot associates an email address with a shipping address and/or billing address for that order.

29. Ammunition Depot also encourages online shoppers to create online accounts. Customers save information in their Ammunition Depot accounts along with their email address, such as their shipping addresses, billing addresses, and phone numbers.

30. Plaintiff expects that discovery will show that Ammunition Depot employs methods to both track the effectiveness of its marketing emails and identify consumers that click on links contained in Ammunition Depot's marketing emails, including by identifying their physical location. For example, Plaintiff expects that discovery will also show that Ammunition Depot gathers information such as geocoordinates and IP addresses from individuals who click on links in Ammunition Depot's commercial emails, and that Ammunition Depot can use such information to determine whether the recipient is in Washington.

31. Ammunition Depot also knew, should have known, or had reason to know that it sends marketing emails to Washington residents due to its large presence in the state and the volume of marketing emails it sends to people around the country.

**D. Ammunition Depot initiated (or conspired to initiate) the transmission of illegal emails to Plaintiff.**

32. At all times relevant to this Complaint, Plaintiff resided in Washington State.

33. Plaintiff has received Ammunition Depot's emails since at least February 2026.

34. Ammunition Depot knows, should know, or has reason to know, that Plaintiff Gay's email address is held by a Washington resident. After all, Plaintiff Gay signed up to receive emails from Ammunition Depot. Plaintiff Gay also has clicked on links contained in Ammunition Depot's emails from his computer, which was registered to an IP address in Washington at all relevant times, or from his smart phone.

35. Plaintiff Gay received two emails on February 11, 2026, with the respective subject lines "Last Chance! Our Winter Sale Ends Tonight" and "Final Hours of Our Winter Sale!", which he alleges to be false and misleading. These emails show that Ammunition Depot engaged in this conduct throughout the relevant period.

36. Plaintiff Gay does not want to receive emails with false and misleading subject lines from Ammunition Depot, though he would like to continue receiving truthful information from Ammunition Depot regarding its products (and actual "sales"). However, due to Ammunition Depot's conduct, Plaintiff Gay cannot tell which emails from Ammunition Depot contain truthful information or which emails are spam with false and misleading information designed to spur him to make a purchase.

37. Plaintiff continues to receive emails with false and misleading subject lines. Ammunition Depot is aware of all the emails it has sent to Plaintiff, and discovery will show the full number of illegal spam emails Ammunition Depot has sent throughout the relevant period.

## CLASS ACTION ALLEGATIONS

38. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of the following classes of persons or entities similarly situated.

39. Plaintiff brings this action for statutory liquidated damages on behalf of himself

and all persons similarly situated and seeks certification of the following class:

> All Washington residents who, within four years before the date of the filing of this Complaint until the date of trial, received an email from or at the behest of Ammunition Depot that contained a subject line that (a) states or implies that a particular promotion will be available for a specified period of time when the actual period for the sale is longer; (b) mischaracterizes the nature of the email or disguises its true commercial purpose; or (c) states without qualification that a particular promotion is available for products "sitewide" when that is not the case.

40. The above-described class of persons shall hereafter be referred to as the "Class." Excluded from the Class are any and all past or present officers, directors, or employees of Defendant, any judge who presides over this action, and any partner or employee of Class Counsel. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, among other things, changing circumstances and/or new facts obtained during discovery.

41. **Numerosity**. The potential Class members as defined are so numerous and so diversely located throughout Washington, that joinder of all the Class members is impracticable. Class members are dispersed throughout Washington. Joinder of all members of the proposed Class is therefore not practicable. Although Plaintiff does not know the precise number of Class members, due to the nature of the trade and commerce involved, Plaintiff believes that the total number of the members of the Class is in the thousands (e.g., on information and belief, Defendant sends similar spams to thousands of individuals throughout Washington).

42. **Ascertainability**. Upon information and belief, Defendant and/or Defendant's agents and affiliates, maintain records of the e-mails they send and the Internet traffic derived from

the e-mail advertising at issue. Moreover, members of the Class who received e-mails with the alleged advertisements may be self-identified through their own e-mail records. As a result, the members of the Class are ascertainable through Defendant's records and/or the records of Defendant's agents and affiliates, as well as through public notice. This matter should therefore be certified as a Class Action to assist in the expeditious litigation of this matter.

43.     **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by Defendant's common course of conduct because they all received unlawful, unsolicited spam e-mails that contain subject lines likely to mislead a recipient.

44.     **Adequacy of Representation**. Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiff and his counsel intend to prosecute this action vigorously. Plaintiff has no antagonistic or adverse interests to those of the Class.

45.     **Existence and Predominance of Common Questions of Law or Fact**. Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

    a)    Whether the subject lines of the specified emails were false and misleading.

    b)    Whether all individuals on Ammunition Depot's email list received the emails.

    c)    Whether Ammunition Depot initiated the transmission or conspired to initiate the transmission of commercial electronic mail messages to recipients residing

in Washington State in violation of RCW 19.190.020.

    d)    Whether Plaintiff and the proposed Class are entitled to an injunction enjoining Ammunition Depot from sending the unlawful emails in the future.

    e)    The nature and extent of classwide injury and damages.

46. **Superiority**. A Class Action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Plaintiff and the Class members have suffered or may suffer loss in the future by reason of Defendant's illegal practices. Certification of this case as a class action will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Certifying this case as a class action is superior because it allows for efficient relief to Class members.

47. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the members of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. The prosecution of separate actions by individual members of the Class may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class who are not parties to such adjudications, or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

48. Defendant has acted or refused to act on grounds that are generally applicable to the Class so that relief is appropriate to the Class as a whole, making class certification appropriate pursuant.

## FIRST CAUSE OF ACTION

### Violations of Washington's Commercial Electronic Mail Act, RCW 19.190, *et seq.* On Behalf of Plaintiff and the Proposed Class (Against All Defendants)

49. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

50. Washington's CEMA prohibits any "person," as that term is defined in RCW 19.190.010(11), from initiating or conspiring to initiate the transmission of a commercial electronic mail message from a computer located in Washington or to an electronic mail address that the sender knows or "consciously avoids knowing" is held by a Washington resident that contains false or misleading information in the subject line.

51. Defendant is a "person" within the meaning of the CEMA, RCW 19.190.010(11).

52. Defendant initiated the transmission or conspired to initiate the transmission of one or more commercial electronic mail messages to Plaintiff and proposed Class members with false or misleading information in the subject line.

53. Defendant's acts and omissions violated RCW 19.190.020(1)(b).

54. Defendant's acts and omissions injured Plaintiff and proposed Class members.

55. The balance of the equities favors the entry of permanent injunctive relief against Defendant. Plaintiff, the members of the Class, and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendant. A permanent injunction against Defendant is in the public interest. Defendant's unlawful behavior is, based on information and belief, ongoing as of the date of the filing of this Complaint. And absent the entry of a permanent injunction, Defendant's unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, is likely to reoccur.

56.     Plaintiff and Class members are therefore entitled to injunctive relief in the form of an order enjoining further violations of RCW 19.190.020(1)(b).

## SECOND CAUSE OF ACTION

### *Per Se* Violations of Washington's Consumer Protection Act, RCW 19.86, *et seq.*

### On Behalf of Plaintiff and the Proposed Class (Against All Defendants)

57.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

58.     Plaintiff and Class members are "persons" within the meaning of the CPA, RCW 19.86.010(1).

59.     Defendant violated the CEMA by initiating or conspiring to initiate the transmission of commercial electronic mail messages to Plaintiff and Class members that contain false or misleading information in the subject line.

60.     A violation of CEMA is a per se violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86.010, *et seq. See* RCW 19.190.030.

61.     A violation of CEMA establishes all five elements of a CPA claim as a matter of law.

62.     Defendant's violations of CEMA are unfair or deceptive acts or practices that occur in trade or commerce under the CPA. RCW 19.190.100.

63.     Defendant's unfair or deceptive acts or practices affect the public interest and thus impact the public interest for purposes of applying the CPA. RCW 19.190.100.

64.     Pursuant to RCW 19.190.040(1), damages to each recipient of a commercial electronic mail message sent in violation of the CEMA are the greater of $500 for each such message or actual damages, which establishes the injury and causation elements of a CPA claim

as a matter of law.

65.     As a result of Defendant's acts and omissions, Plaintiff and Class members are entitled to $500 in statutory damages for each and every email that violates the CEMA.

66.     Defendant engaged in a pattern and practice of violating the CEMA.

67.     Plaintiff and Class members are entitled to recover reasonable attorneys' fees and costs, pursuant to RCW 19.86.090.

68.     Plaintiff and members of the Class are also entitled to, and do seek, injunctive relief prohibiting Defendant from violating the CPA in the future.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of the members of the Class, seeks judgment against Defendant and requests that the Court:

A. Certify the asserted claims, or the issues raised, as a class action;

B. Appoint Plaintiff as Class Representative;

C. Appoint the undersigned counsel as counsel for the Class;

D. Enter declaratory, equitable, and/or injunctive relief as permitted by law to ensure Defendant does not continue to engage in the unlawful conduct described in this Complaint, and an accompanying order that the Court retain jurisdiction for a period of at least six months to ensure that Defendant complies with those measures;

E. Enter an order to ensure that Defendant is restrained from altering, deleting, or destroying any documents or records that could be used to identify members of the Class;

F. Award statutory damages where applicable;

G. Award pre- and post-judgment interest;

H. Award reasonable attorneys' fees and costs, as allowed by law, including but not limited to RCW 19.86.090; and

I.   Award any other relief the Court deems just or reasonable under the circumstances.

DATED:  June 10, 2026

Respectfully submitted,

*/s/ W. Blair Castle*
W. Blair Castle (Fla. Bar No. 1031504)
blair@kjclawgroup.com
**KJC LAW GROUP, A.P.C.**
9701 Wilshire Blvd.
Suite 1000
Beverly Hills, CA 90212
Tel: (310) 861-7797

Kevin J. Cole (*Pro Hac Vice Forthcoming*)
kevin@kjclawgroup.com
**KJC LAW GROUP, A.P.C.**
9701 Wilshire Blvd.
Suite 1000
Beverly Hills, CA 90212
Tel: (310) 861-7797

*Attorneys for Plaintiff and the Proposed Class*