**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

JOHN GAY, individually and on behalf of
all others similarly situated,

     Plaintiff,

v.

AMDEP HOLDINGS, LLC d/b/a
AMMUNITION DEPOT,

     Defendant.

Case No. 9:26-cv-80695-DMM

CLASS ACTION

---

### DEFENDANT AMDEP HOLDINGS, LLC d/b/a AMMUNITION DEPOT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT WITH INCORPORATED MEMORANDUM OF LAW

Defendant Amdep Holdings, LLC d/b/a Ammunition Depot ("Ammunition Depot" or "Defendant") moves under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Plaintiff John Gay's ("Plaintiff") Class Action Complaint (Doc. 1) (the "Complaint") in its entirety, with prejudice, for lack of Article III standing and failure to state a claim.

1.   This case exemplifies the kind of no-injury class action the Supreme Court warned against in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). Plaintiff—a serial filer[1] and self-described subscriber to Ammunition Depot's promotional emails—received two emails on February 11, 2026, whose subject lines said the company's "Winter Sale" was ending that evening. The next day, Ammunition Depot launched a different promotion—the "Presidents Day Sale"—with different discounts, codes, and terms. Plaintiff bought nothing, paid nothing, and alleges no concrete harm.

---

[1] Plaintiff has filed at least five other cases asserting similar facts and claims. *See, Gay v. SeaWorld Parks & Entertainment Inc.,* Case No. 3:26-cv-01700-BAS-DEB, in the U.S. District Court for the Southern District of California; *John Gay v. Big 5 Sporting Goods LLC et al.*, Case No. 2:26-cv-02876-AB-SK, in the U.S. District Court for the Southern District of California; *John Gay v. DIFF, LLC*, Case No. 2:26-cv-06242-AJR, in the U.S. District Court for the Central District of California; *John Gay v. Crocs Retail, LLC,* Case No. 25-cv-04177-PAB-SBP, in the U.S. District Court for the District of Colorado; and *John Gay v Dolls Kill, Inc.*, Case No. 25-cv-10482-PHK, in the U.S. District Court for the Northern District of California. To date, none of these cases has been adjudicated to a judgment.

Yet he seeks $500 per email on behalf of a putative class of thousands of Washington residents while pleading facially deficient jurisdictional facts.

2.      The Complaint should be dismissed because Plaintiff lacks Article III standing, fails to state a claim under Washington's Commercial Electronic Mail Act ("CEMA"), RCW 19.190 *et seq.*, and cannot maintain a derivative Consumer Protection Act ("CPA") claim.

**STATEMENT OF RELEVANT ALLEGATIONS**

3.      Plaintiff alleges that on February 11, 2026, Ammunition Depot sent commercial emails with subject lines including "Winter Sale Ends Tonight" and "Final Hours of Our Winter Sale!" (Compl. ¶ 35.) The Winter Sale advertised up to 65% off List Price and offered an additional 5% off orders of $149 or more with promotional code WINTER5P. (Compl. ¶¶ 2–3, 19, 24; Composite Exhibit A[2]).

4.      The next day, Ammunition Depot launched a Presidents Day Sale offering either 6% off all orders (code PRESIDENTS6) or free shipping on orders of $299 or more (code PRESIDENTSFS). (Compl. ¶¶ 2–3, 24; Exhibit B.) That promotion used different discounts, qualifying terms, and coupon codes.

5.      Plaintiff admits that he signed up to receive Ammunition Depot emails (Compl. ¶ 34), and "would like to continue receiving truthful information from Ammunition Depot regarding its products (and actual 'sales')." (Compl. ¶ 36.) He does not allege that he purchased anything, paid any money, or suffered any tangible harm from the emails.

6.      The Complaint's core factual assertions—including that Defendant "always offers at least 5% off orders $149+" and "determines in advance how long it will offer a given promotion"— are pleaded only "on information and belief." (*See, e.g.*, Compl. ¶¶ 22–23.)

---

[2] Defendant has concurrently filed its Motion to Take Judicial Notice and to Consider Documents Incorporated by Reference in Support of its Motion to Dismiss to provide the Court with the actual advertisements referenced in Plaintiff's complaint.

## LEGAL STANDARDS

### A.      Rule 12(b)(1): Lack of Subject-Matter Jurisdiction

A motion to dismiss under Rule 12(b)(1) challenges the court's subject-matter jurisdiction. The party invoking federal jurisdiction bears the burden of establishing it. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). When a defendant makes a facial attack on jurisdiction, the court looks only at the complaint and determines whether the plaintiff has sufficiently alleged a basis for subject-matter jurisdiction. *See id.* Where standing is challenged, the plaintiff must demonstrate an injury-in-fact that is concrete, particularized, and actual or imminent—not conjectural or hypothetical. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).

### B.      Rule 12(b)(6): Failure to State a Claim

To survive a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Threadbare recitals of a cause of action's elements, supported by mere conclusory statements, are insufficient. *Id.*

## ARGUMENT

### I.      THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF ARTICLE III STANDING (RULE 12(b)(1))

Article III limits federal jurisdiction to "Cases" and "Controversies." A plaintiff must establish (1) a concrete and particularized injury in fact; (2) traceability; and (3) redressability. *Lujan*, 504 U.S. at 560–61. After *TransUnion*, concrete harm must bear a "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." 594 U.S. at 417. Standing must exist "for each claim" and "for each form of relief" sought. *Id*. at 431.

3

Standing is a "threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "The 'foremost' standing requirement is injury in fact." *Trichell v. Midland Credit Management, Inc.*, 964 F.3d 990, 996 (11th Cir. 2020) (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103 (1998)). Injury in fact requires an invasion of a legally protected interest that is concrete, particularized, and actual or imminent—not conjectural or hypothetical. *Spokeo*, 578 U.S. at 339.

A plaintiff must also allege causation and redressability: the injury must be fairly traceable to the defendant's conduct and likely—not merely speculative—to be redressed by a favorable decision. *Berrocal v. Att'y Gen. of United States*, 136 F.4th 1043, 1051–52 (11th Cir. 2025). At the pleading stage, the plaintiff must "clearly allege facts demonstrating" each standing element. *Gesten v. Burger King Corp.*, No. 17-22541, 2017 WL 4326101, at *1 (S.D. Fla. Sept. 27, 2017) (citing *Spokeo*, 578 U.S. at 338).

A statutory violation alone is not enough. A "bare procedural violation, divorced from any concrete harm," cannot satisfy Article III. *Spokeo*, 578 U.S. at 341. A plaintiff also does not "automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue." *Trichell*, 964 F.3d at 997 (quoting *Spokeo*, 578 U.S. at 341).

Here, Plaintiff's alleged injury is the receipt of two promotional emails with subject lines he claims were misleading. (Compl. ¶ 35.) He does not allege that he purchased—or refrained from purchasing—anything in reliance on those subject lines. He does not allege that he paid money, suffered economic loss, wasted time, experienced an invasion of privacy, or suffered emotional distress. He does not even allege that he opened the emails or changed his behavior. His alleged harm is simply the *receipt* of emails he asked to receive. (Compl. ¶ 34.)

Under *Spokeo*, "[a] bare procedural violation, divorced from any concrete harm," does not satisfy Article III. 578 U.S. at 341. Under *TransUnion*, subject lines that caused no action or injury likewise do not establish concrete harm. 594 U.S. at 435–36.

Courts applying Article III to CEMA claims have rejected bare statutory violations as insufficient. *Nuri v. True Religion Apparel*, No. 2:25-cv-00690-LK, 2026 WL 864886 (W.D. Wash. Mar. 30, 2026). In its recent opinion, the Nuri court stated:

> [A] plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue. … The legislature's creation of a statutory prohibition or obligation and a cause of action "does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III[.]" While CEMA does not require that Nuri independently establish an injury in fact under Washington law, the Court "cannot treat an injury as 'concrete' for Article III purposes based only on [the legislature's] say-so," because "under Article III, an injury in law is not an injury in fact."… For standing purposes, therefore, an important difference exists between a plaintiff's *statutory* cause of action to sue a defendant over the defendant's violation of state law, and a plaintiff suffering *concrete harm* because of the defendant's violation of state law. ... . "[N]ot all [advertising] inaccuracies cause harm or present any material risk of harm" required for Article III injury.

*Id.* at *2-3 (emphasis in original; internal citations omitted). Because the plaintiff did "not explain at any point how [defendant's] email subject lines led to any harm whatsoever," the *Nuri* court concluded:

> Nuri's allegations do not closely resemble nuisance or otherwise establish Article III standing. There is no allegation that any of the relevant emails were unsolicited; to the contrary, Nuri provided her email address to True Religion and "would like to continue receiving truthful information from True Religion regarding its products."

*Id.* at *3. *Montes v. Catalyst Brands LLC*, No. 2:25-cv-0281-TOR, 2025 WL 3485827 (E.D. Wash. Dec. 4, 2025), reached the same result, dismissing a CEMA claim and holding:

> The Court fails to see how receiving an email with a misleading or false subject line harmed Plaintiff in a concrete manner that would rise to the level required for standing. Plaintiff does not allege an economic loss, detrimental reliance, or any comparable injury. For example, the simple act of failing to meet the standard requisite duty alone is not a harm. Similarly, the mere receipt of misleading or false subject lines in emails does not, by itself, constitute an injury.

*Id.* at *3 (internal citations omitted).

Plaintiff's request for injunctive relief fails for the same reason. He alleges no concrete injury, imminent threat, or ongoing harm. If receiving the email is not a concrete injury, an injunction cannot redress it. *Id.* at *4.

The Washington Supreme Court reached a similar conclusion under the CPA in *Montes v. SPARC Grp. LLC,* 6 Wash.3d 321 (Wash. 2026). There, the plaintiff alleged that Aeropostale violated the CPA through a "false discounting" scheme by advertising perpetual discounts that allegedly misled customers about price history. The court considered this certified question from the Ninth Circuit:

> [w]hen a seller advertises a product's price, coupled with a misrepresentation about the product's discounted price, comparative price, or price history, does a consumer who purchases the product because of the misrepresentation suffer an 'injury in his or her business or property' under [the CPA] if the consumer pays the advertised price?"

Id. at 329. The Washington Supreme Court answered no: "without more," a "consumer does not suffer an injury in 'her business or property' when she purchases—and obtains and keeps—the fungible product she sought to obtain but does so because the seller misrepresented the product's price history." Washington thus joined the majority of states holding that disappointed bargain expectations, standing alone, do not establish injury under consumer protection statutes. Courts in New Jersey,[3] New York,[4] Massachusetts,[5] and Missouri[6] have likewise dismissed false-discounting or comparable-pricing claims where plaintiffs received the advertised products at the prices paid and did not allege that the goods were worth less than they paid or differed from what was promised.

---

[3] *Robey v. SPARC Grp. LLC*, 256 N.J. 541, 561 (2024).

[4] *Belcastro v. Burberry Ltd.*, No. 16 CV 1080 (VEC), 2017 WL 5991782, at *4 (S.D.N.Y. Dec. 1, 2017).

[5] *Mulder v. Kohl's Dep't Stores, Inc.*, No. 15 11377 FDS, 2016 WL 393215, at *6 (D. Mass. Feb. 1, 2016), aff'd, 865 F.3d 17 (1st Cir. 2017).

[6] *Hennessy v. Gap*, 86 F.4th 823, 827 (8th Cir. 2023) (applying Missouri law).

6

Eleventh Circuit standing cases are consistent. *See, e.g., Valiente v. Palm Beach Credit Adjustors, Inc.*, 817 F. Supp. 3d 1307 (S.D. Fla. 2025) (wasted time, emotional distress, and loss of sleep from collection letters did not establish concrete injury); *Weitz v. Genting New World LLC*, 661 F. Supp. 3d 1208, 1212-13 (S.D. Fla. 2023) (conclusory allegations of statutory damages, inconvenience, invasion of privacy, aggravation, and annoyance were insufficient); *Klein v. Receivable Management Group, Inc.*, 595 F. Supp. 3d 1183, 1190 (M.D. Fla. 2022) ("Confusion, by itself, is not a concrete harm"); *Daisy, Inc. v. Mobile Mini, Inc.,* 489 F .Supp. 3d 1287 (M.D. Fla. 2020) (A bare procedural violation of a statute is not enough to satisfy the injury-in-fact requirement for Article III standing, even if Congress prescribed a cause of action).

Plaintiff's claimed injury is the bare statutory violation those cases reject. Receiving an allegedly misleading promotional email—without purchase, payment, reliance, or other tangible consequence—bears no close relationship to any traditionally recognized harm. Plaintiff therefore lacks standing, and this case should be dismissed for want of jurisdiction.

## II.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER CEMA (RULE 12(b)(6))

CEMA prohibits initiating or conspiring to initiate a commercial electronic mail message with a subject line that "would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message." RCW 19.190.020(1)(b). Even accepting the Complaint's allegations as true, Plaintiff does not plausibly allege that any subject line was false or misleading.

### A.    *The Subject Lines Were Not False or Misleading; the Winter Sale Did End*

The Complaint's falsity theory is that Ammunition Depot's "Winter Sale" did not truly "end" on February 11, 2026, because a different sale began the next day. (Compl. ¶¶ 2–3, 24.) The Complaint's own allegations defeat that theory.

The Complaint alleges that the Winter Sale offered "5% off orders $149+" using code WINTER5P. (Compl. ¶¶ 19, 24.) By Plaintiff's own account, the Presidents Day Sale "offered even

deeper discounts:" "6% Off Or Free Shipping," using code PRESIDENTS6 on all orders or code PRESIDENTSFS for free shipping on orders of $299 or more. (Compl. ¶¶ 2–3, 24; Exhibit B.) Those were different promotions with different discounts, thresholds, and codes. When Ammunition Depot said its "Winter Sale Ends Tonight," that statement was true: the Winter Sale—defined by its specific terms, code, and structure—ended. A later, *different* promotion did not make the earlier subject line false.

This case is not *Brown v. Old Navy, LLC*, 4 Wash.3d 580 (Wash. 2025), where Old Navy used subject lines stating that sales would end on specific dates, only to extend those same sales. CEMA does not require a retailer to cease all promotional activity after ending one named promotion. Treating sequential, differently structured sales as misleading would extend CEMA beyond its text and purpose.

### B.      *Urgency Phrasing Is Non-Actionable Puffery*

"Ends Tonight," "Last Chance," and "Final Hours" are subjective urgency phrases that constitute non-actionable puffery. *See Brown*, 4 Wash.3d at 595 (holding that vague promotional language encouraging consumers to act quickly does not constitute actionable misrepresentation). They do not make specific, measurable factual claims on which a reasonable consumer would rely. They are commercial exhortations, not falsifiable assertions of material fact. *Id.*

In any event, the phrases were *true*: the Winter Sale ended that night, and February 11 was the last chance to use that sale's specific terms.

### C.      *Core Allegations Are Impermissibly Conclusory*

The Complaint's operative allegations are pleaded largely "on information and belief." Plaintiff alleges on information and belief that Ammunition Depot "always offers at least 5% off orders $149+" (Compl. ¶ 22), "determines in advance how long it will offer a given promotion" (Compl. ¶ 23) and merely re-labeled the same promotion. These conclusory assertions do not state a plausible claim under *Twombly* and *Iqbal*.

8

#### D.     *Reliance on FTC Guide 16 C.F.R. § 233.5 Is Misplaced*

The Complaint invokes the FTC's Guides Against Deceptive Pricing, 16 C.F.R. § 233.5, for the proposition that a seller may not make a "limited" offer that is not limited. (Compl. ¶ 20.) But § 233.5 is a federal regulatory guide; it is not incorporated into CEMA and does not define CEMA's standard. CEMA asks whether a subject line "would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message." RCW 19.190.020(1)(b). Plaintiff's attempt to import a federal guide into a state statutory claim should be rejected.

### III.    THE EMAILS WERE NOT "UNSOLICITED"—PLAINTIFF CONSENTED TO RECEIVE THEM

Although CEMA does not expressly require that emails be "unsolicited" for liability under RCW 19.190.020(1)(b), the statute must be read in light of its purpose: protecting Washington residents from deceptive *commercial spam*. CEMA's legislative findings target "unsolicited commercial electronic mail messages" that impose costs on recipients who did not request them. RCW 19.190.010.

Plaintiff admits that he "signed up to receive emails from Ammunition Depot" (Compl. ¶ 34) and "would like to continue receiving truthful information from Ammunition Depot regarding its products (and actual 'sales')." (Compl. ¶ 36.) Those admissions undercut any claim that he is the aggrieved recipient CEMA was enacted to protect. He is a willing subscriber seeking class-action statutory damages over promotional emails he chose to receive. A subscriber to retailer promotions reasonably expects promotional language, including time-limited urgency appeals, and is less likely to be misled by that language than an unsolicited recipient.

### IV.    THE DERIVATIVE CPA CLAIM FAILS WITH THE CEMA CLAIM

Plaintiff's second cause of action alleges that a CEMA violation is a per se CPA violation because RCW 19.190.030 provides that a "violation of [CEMA] is a violation of the consumer

protection act." (Compl. ¶¶ 46–49.)

Because the CPA claim is entirely derivative of the alleged CEMA violation, it fails if the CEMA claim fails. Without a viable CEMA claim, there is no predicate violation for per se CPA liability. *See Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1066 (9th Cir. 2009) (dismissing derivative CPA claim where predicate statutory violation was not adequately pleaded). The second cause of action should be dismissed.

## V.      DEFENDANT IS ENTITLED TO AN AWARD OF ITS ATTORNEYS' FEES

CEMA authorizes an award of costs and reasonable attorneys' fees to a prevailing party. RCW 19.190.090(3). Ammunition Depot therefore seeks the fees and costs it incurred in responding to the Complaint.

<u>**CONCLUSION AND PRAYER FOR RELIEF**</u>

For these reasons, Defendant Amdep Holdings, LLC d/b/a Ammunition Depot respectfully requests that the Court dismiss the Complaint in its entirety, with prejudice, under Rules 12(b)(1) and 12(b)(6); award Defendant its reasonable costs and attorneys' fees under RCW 19.190.090(3); and grant any other relief the Court deems just and proper.

Respectfully submitted,

DATE:  July 15, 2026

*/s/ Traci H. Rollins, Esq.*
TRACI H. ROLLINS, ESQ.
Florida Bar No. 769071
GUNSTER, YOAKLEY & STEWART, P.A.
777 South Flagler Drive
Suite 500 East
West Palm Beach, FL  33401
Telephone: (561) 650-0510
trollins@gunster.com

*Counsel for Defendants*

ACTIVE:39938330.2

10